UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CARL B. RILEY                              CIVIL ACTION NO. 08-cv-0146

VERSUS                                     JUDGE WALTER

GEORGE SAVAGE, ET AL                       MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Carl B. Riley ("Plaintiff") is a prisoner who was formerly housed at the Forcht Wade Correctional Center. He filed this civil rights action against officials at the prison and the Secretary of the Department of Corrections. Plaintiff alleges that Defendants failed to protect him from an attack by a fellow inmate.

The court reviewed the original complaint and ordered that Defendants be served and respond to the complaint. Plaintiff then filed a First Amended Complaint (Doc. 11) in which he set forth his allegations in more detail. Defendants Richard Stalder, Anthony Batson, George Savage, and Wayne Millus responded with a Motion to Dismiss (Doc. 25) pursuant to Fed. R. Civ. Proc. 12(b)(6) and based on an assertion of qualified immunity. Plaintiff filed a memorandum (Doc. 33) that offered argument in opposition to the motion and proposed that the court allow him to amend his complaint yet again. Plaintiff set forth in his memorandum the several paragraphs that he proposes to amend. He would essentially revise

all of the substantive factual allegations in the complaint. The court will, for purposes of assessing the Motion to Dismiss, look to the allegations as Plaintiff proposes to amend them.

**Relevant Allegations**

When ruling on a motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2000). Accordingly, Plaintiff's allegations will be stated herein as if they were true. Plaintiff was incarcerated at the Forcht Wade facility when, in the early morning hours of June 25, 2007, two inmates in Plaintiff's Foxtrot 2 dorm threatened him. The other inmates were apparently unhappy because Plaintiff got out of bed to heat some coffee in a microwave oven. Proposed Amended Complaint, ¶ 10.

An unidentified officer who was working in the dorm intervened and told the three inmates that he would write a disciplinary report against them if they did not stop arguing. ¶ 11. Plaintiff asked the officer if he would get the complaining inmates "straight" about Plaintiff being able to get up and make coffee when he wanted, but the officer refused to do so. ¶ 12. Plaintiff also asked the officer to "call rank" about the issue. ¶ 13. The officer apparently declined to do so.

Plaintiff commenced an administrative remedies procedure ("ARP") following the "threats of his life from the inmates" and the refusal of the officer on duty to "call ranking" when Plaintiff asked. ¶ 14. On June 29, four days after the incident in the dorm, Plaintiff was called to the main security office. Lt. Col. George Savage and Major Joe Carter

questioned Plaintiff about the threats from the inmates and the ARP that Plaintiff filed. The two men stated they would come to the Foxtrot 2 dorm after disciplinary court and investigate the threats by the two inmates, but neither Carter nor Savage ever showed up at the dorm to investigate. ¶ 15.

Plaintiff did not receive any response from the ARP grievance that he filed on June 25, and he got no further response from Carter or Savage, so he filed an amendment to his ARP grievance. Plaintiff delivered the document to Wayne Millus, the ARP screening officer. The amendment identified Carter and Savage. ¶ 16.

Plaintiff filed a grievance, dated July 9, 2007, directly with the DOC. He referred to the June 25 incident, and mentioned Wayne Millus, Joe Carter, George Savage, and the DOC. He requested a transfer because of the threats on his life by inmates and failure of officers to "perform their duties as security officers." ¶ 17. Plaintiff mailed that grievance to his wife, who in turn mailed it to the DOC. Plaintiff never got any response to the July 9 letter. ¶ 18.

Inmate John Masterson, apparently one of the inmates who made the original threat, threatened Plaintiff again on August 7, 2007. Masterson said that he did not want Plaintiff getting up at night. Plaintiff "wrote a request by letter to the warden, Anthony Batson, and these two inmates [Plaintiff does not identify the second inmate] were moved from out of Foxtrot 2 dorm and put into Delta dorm, about August 10, 2007." ¶ 19.

Several days later, on August 19, "inmate Masterson was let back into Foxtrot 2 dorm by officer Jane Roe, who was working the morning of August 19, 2007, assaulting the plaintiff with a chair out the dorm, by sneaking and hitting him in the jaw, breaking it into two places." Plaintiff ran from the dorm and encountered Captain Horton, who escorted Plaintiff to the skilled nursing facility for treatment. ¶ 20. Plaintiff then urges in his memorandum that the "above statements are what happened concerning the claims against the defendants in this case, which the plaintiff contends to prove the violation of each defendant."

Plaintiff set forth another allegation in his First Amended Complaint, which is not repeated in the memorandum's proposed amendments, so it is not clear whether Plaintiff continues to press the allegation. The allegation is that Plaintiff filed another ARP grievance in August 2007 after "the defendant" had inmate Masterson brought to the skilled nursing facility where Plaintiff had been treated for his broken jaw, "to intimidate the plaintiff and threaten plaintiff as if to attack him again." Plaintiff said he was in fear of his life, and "the defendant" only laughed at him. Plaintiff does not identify this defendant, but he does include a conclusory allegation that: "George Savage, Wayne Millus, and Anthony Batson were personal involved in this matter." First Amended Complaint, ¶ 21.

**Qualified Immunity**

An individual defendant is entitled to qualified immunity from claims for money damages unless the facts alleged, taken in a light most favorable to the Plaintiff, show that

the defendant's conduct violated a constitutional right that was clearly established at the time of the violation. See Saucier v. Katz, 121 S.Ct. 2151 (2001). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002)(en banc). In a Rule 12(b)(6) contest, that means the Plaintiff must point to portions of his complaint "that state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994).

**Failure to Protect**

Plaintiff's principal claim is that prison officials failed to prevent the attack. Prison officials have a constitutional duty to protect prisoners from violence at the hands of fellow inmates. To establish Section 1983 liability for breach of that duty, the inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were deliberately indifferent to the inmate's safety. Farmer v. Brennan, 114 S.Ct. 1970, 1976-77 (1994).

A prison official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate ... safety" and disregards that risk. Id. at 1979. The officer's awareness of the risk is evaluated subjectively. The officer "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must in fact also draw the inference. Id. "No liability exists, however, if an official

reasonably responded to a known substantial risk, 'even if the harm was ultimately not averted'" Longoria v. Texas, 473 F.3d 586, 593 (5th Cir. 2006), quoting Farmer, 114 S.Ct. at 1983.

**Analysis**

    **A. Introduction**

As noted above, Plaintiff has the obligation, in the face of the qualified immunity defenses, to point to allegations in his complaint that state with factual detail and particularity the basis for the claim. And it is improper to analyze a group of defendants' actions collectively in assessing qualified immunity. Each defendant's entitlement to immunity must be examined separately. Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir. 2007).

    **B. Secretary of the DOC**

Plaintiff's original complaint named as a defendant John Doe, the Secretary of the DOC, who was described as being responsible for overseeing enforcement of the laws and regulations governing penal institutions in the state. The complaint did not include any other allegations that specifically targeted the Secretary. Plaintiff did allege that he wrote the DOC concerning the alleged threats and the failure of officers at Forcht Wade to address his ARP grievance to his satisfaction.

Plaintiff's First Amended Complaint restated Plaintiff's allegations in their entirety. Several defendants were listed, but Plaintiff did not list the Secretary as a defendant in this revised pleading. And the only allegation that potentially targeted the Secretary was a repeat

of the allegations that Plaintiff sent a letter to the DOC and requested a transfer because of threats. Plaintiff's proposed Second Amendment (included in his memorandum) does not direct any additional allegations at the Secretary.

An amended complaint ordinarily supercedes the prior complaint unless the amendment specifically refers to or adopts the earlier pleading. Boelens v. Redman Homes, Inc., 759 F.2d 504, 507 (5th Cir. 1985). Plaintiff's restated and amended complaint, which did not name the Secretary as a defendant, appears to have dropped his claim against the Secretary through the amendment process. Furthermore, Plaintiff has not alleged any specific facts that might suggest the Secretary was deliberately indifferent to a serious risk of attack. The mere allegation that Plaintiff sent a letter of complaint to the Department is insufficient to warrant further proceedings regarding whether the Secretary is personally liable for violating a constitutional right.

**C. George Savage and Joe Carter**

George Savage and Joe Carter are accused of meeting with Plaintiff to discuss his grievance, promising an investigation, and not keeping that promise. Plaintiff alleges that the problem inmates were, however, later transferred to another dormitory, and neither Savage nor Carter is alleged to have had any personal involvement in allowing inmate John Masterson to get back in the dorm and assault Plaintiff. Accordingly, there is no basis to conclude that any action or inaction by Carter or Savage had a causal connection to the attack on Plaintiff. If Carter and Savage had conducted the promised investigation and granted

Plaintiff's wish, inmate Masterson or Plaintiff would have been transferred to another dorm, which is exactly what happened despite the lack of investigation. The attack several days later is alleged to be the fault of Jane Roe, who allowed Masterson to reenter the Foxtrot 2 dorm. The facts alleged do not state a claim against either of these two defendants sufficient to overcome their qualified immunity defense, so they should be dismissed.[1]

**D. Warden Anthony Batson**

Plaintiff alleges that "he wrote a request by letter to the warden, Anthony Batson, and these two inmates were moved from out of Foxtrot 2 dorm and put into Delta dorm, about August 10, 2007." That obviously cannot be a basis for the imposition of liability on Warden Batson. Plaintiff urges that the warden is nonetheless liable because he "failed to ensure that his direct subordinates carried out his policies by not allowing inmate Masterson back into Foxtrot 2 ... ." Plaintiff alleges that it was officer Jane Roe who let Masterson into the dorm,

---

[1] Savage joins in the Motion to Dismiss. Carter has never appeared in the case. The Marshal attempted to serve Carter through the DOC legal department, pursuant to an arrangement between the court and the Attorney General for service on current DOC employees, but the service was returned with a notation that Carter is no longer employed by the DOC. The court nonetheless recommends, *sua sponte*, that the claims against Carter be dismissed for failure to state a claim. "A district court may dismiss an action on its own motion under Rule 12(b)(6) as long as the procedure employed is fair." Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998). This procedure is fair, because this Report and Recommendation provides Plaintiff with sufficient notice of and opportunity to respond to the possible dismissal of his claims against Carter. See Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998) (sua sponte invocation of defense in Report and Recommendation satisfied due process).

and he argues that Roe should have been informed of the threats to Plaintiff so that she would know to not let Masterson in the dorm.

Supervisory officials are not liable under 42 U.S.C. § 1983 for the actions of subordinates on a theory of vicarious liability or respondeat superior. The supervisor is liable only if he is personally involved in the constitutional deprivation or if there is a sufficient causal connection between his conduct and the violation. See Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987). Plaintiff does not allege facts against Warden Batson that depict him acting with deliberate indifference to a serious risk of harm. Rather, Plaintiff at best alleges negligence, but negligent action does not state a claim under Section 1983. See Davidson v. Cannon, 106 S.Ct. 668 (1986) (due process clause not triggered by lack of due care by prison officials that led to inmate attack). All claims against Warden Batson should be dismissed.

**E. Wayne Millus**

Wayne Millus is not faulted for failing to prevent the attack. Rather, Plaintiff alleges that Millus received his ARP grievance but "prevented him from entering the ARP process," which Plaintiff describes as a due process violation. Plaintiff's allegations on this point are not clear, but he appears to suggest that Millus, rather than logging the grievance, directed it to Savage and/or Carter, which led to their meeting with Plaintiff.

Plaintiff does not have a federally protected liberty interest in having his grievances processed or resolved to his satisfaction. Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir.

2005). Plaintiff does have a right of access to the courts, and filing a grievance may be a precondition to a suit, but the court will treat a claim as exhausted if prison officials do not respond to it within the time permitted by the grievance policy. See Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998). Finally, interference with the right of access to the courts is actionable only where the inmate demonstrates actual injury stemming from the defendant's unconstitutional conduct. Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999). Plaintiff was not prevented from pursuing this suit or other legal remedies because of the way Millus allegedly handled the grievance, so Plaintiff has not alleged an actual injury that would permit a remedy under Section 1983. Defendants did file a separate Motion for Partial Summary Judgment (Doc. 23) that attacked any claims that were not exhausted through the one grievance that prison officials show on their books and recognize. To the extent this defense might give rise to an injury to Plaintiff, the court has rendered the issue moot by proceeding to address the merits of all claims alleged in the complaint, as amended, without regard to any exhaustion defense.[2]

---

[2]The court need not address the merits of the exhaustion defense, but it notes that Defendants argue that a prisoner must file a grievance against the person he later sues. Defendants cite Sixth Circuit authority for that proposition, but that authority was overruled in Jones v. Bock, 127 S.Ct. 910 (2007). Furthermore, the Fifth Circuit had already declined to require an ARP grievance to name a particular person before that person could be sued. Rather, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004).

**F. Intimidation**

Plaintiff alleges that "the defendant" had inmate Masterson brought to the skilled nursing facility "to intimidate the plaintiff and threaten plaintiff as if to attack him again." Plaintiff said he was in fear of his life, and "the defendant" only laughed at him. Plaintiff does not identify this defendant. He does include a conclusory allegation that: "George Savage, Wayne Millus, and Anthony Batson were personal involved in this matter."

Mere threatening language and gestures of a custodial officer do not amount to constitutional violations. McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.1983). And the mere unmaterialized fear of attack has been held to not violate the Eighth Amendment. Babcock v. White, 102 F.3d 267, 272 (7th Cir. 1996); Doe v. Welborn, 110 F.3d 520 (7th Cir. 1997). But most important, Plaintiff has not alleged with any degree of factual specificity how any named defendant played any personal role in this event. The bare assertion that three of the defendants were involved is simply insufficient to overcome the qualified immunity defenses. These allegations do not state an actionable claim against any defendant.

Accordingly;

**IT IS RECOMMENDED** that the **Motion to Dismiss (Doc. 25)** be **granted** and that all claims against defendants Richard Stalder, Anthony Batson, George Savage, and Wayne Millus be **dismissed with prejudice** for failure to state a claim on which relief may be granted.

**IT IS FURTHER RECOMMENDED**, sua sponte, that all claims against defendant Joe Carter be **dismissed with prejudice** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER RECOMMENDED** that the defendants' **Motion for Partial Summary Judgment (Doc. 23)** be **denied as moot** in light of the resolution of the merits of the asserted claims.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 17th day of April, 2009.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE